## Hefferman *vs* Forward, *et al.*

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Equity jurisdiction.    Non-residents.    Unknown heirs.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

OWEN CARRELL died in the county of Jefferson, leaving a widow and two infant children.    Just before he died, Forward, by force, took from his possession a negro girl, claiming her as his own, and afterwards sold her, but whether before or after the death of Carrell, does not appear.    The widow and children of Carrell removed out of the State, and after his death, twelve months having expired without administration upon his estate, Hefferman filed this bill against Forward and the widow and unknown heirs of Carrell, to subject the slave or her value, to the payment of a demand which he sets up against the estate of Carrell.    The Chancellor dismissed his bill for the want of jurisdiction only, prematurely hearing and deciding the cause before it was prepared for hearing on the merits, and he has appealed to this Court.

The section which provides a joint action against administrators and heirs, is a part of the statute of 1792, (1 *Stat. Laws*, 316,) which first subjected lands to the payment of debts, and was obviously intended to reach the real estate which should descend to the heirs, and which, by its provisions, was made liable to the payment of debts.    The universal practice sanctioned by the repeated decisions of this Court, has been to render the judgment against the heirs, to *be levied* of the estate *descended* to them, which restricts the levy, as to them, to the real estate.

The statute of 1819, (1 *Stat. Laws*, 780,) authorizes a separate action to be brought against heirs, when administration has not been taken out for twelve months after the death of the decedent.    The main purpose and object of this statute was, no doubt, so to modify the provisions of the first statute, as to authorize a suit on the contingen-

cy stated, against the heirs separately, without joining the administrator, as required by the first statute, so as to reach the real estate in cases in which there might be no personal estate. But as this is a remedial statute, and there may be personal assets in the hands of the heirs, and yet no administration taken on the estate, and as by the provisions and spirit of our execution laws, the personalty should be first applied to the payment of debts; and as by the provisions of this or the former statute, there is no specific *form* of judgment prescribed, but under the former statute the judgment has been so framed as to reach both funds in the hands of their appropriate representative, it may be questioned whether the latter statute, in the absence of any other personal representative, should not be construed as looking to the heirs as the representative of the personalty as well as the realty, and the judgment so rendered as to reach both funds in their hands, and in the *order* in which they should be subjected. If this course should be about to interrupt the rateable equality of distribution of the proceeds of the estate among all the creditors, in cases in which there should not be enough to satisfy all, the difficulty might be obviated by appropriate application to the Chancellor.

It is true if the heirs intermedled with the personalty, they might be sued as executors *de son tort.* But the same obstruction to an equality of distribution would arise in this mode of proceeding as in the former, and could be obviated only in the manner suggested, if it could be obviated at all, in either case.

But whether in a proceeding at law against the heirs, the latter statute might be construed as intimated or not, we have no doubt that in a proceeding in chancery against non-residents under our statutes, that the heirs may be so far regarded as the representative of the personalty as well as realty, as to authorize the proceedings against them, as non-residents, in the absence of any duly appointed personal representative. They have an ultimate interest in the personal estate, and indeed, are equitably entitled to the whole of it after the payment of debts. They are, therefore, interested in defending against and resisting the payment of the demand set up, and if it were unjust,

Where there has been no administration for 12 months, the heirs may, in equity, under our statute, be so far regarded as the representatives of the personalty as well as the realty, as to authorize a proceeding against them by a creditor, to reach the personalty.

would be as likely to oppose a successful resistance, as the means of enjoying the fund sought to be subjected, as a naked personal representative, who had no ultimate interest in the fund. It would seem to be hard, therefore, and contrary to the spirit of our statutes authorizing the proceeding against non-resident debtors, &c., when the fund sought to be subjected is within the power and jurisdiction of the Court, that the creditor should not be allowed to proceed against it, making all persons interested against the debt, and in the fund sought to be subjected, parties, merely because an administrator or personal representative, in whom, if appointed, the *naked* legal title would vest, has not been appointed, and therefore, cannot be made a party.

Besides, it is believed that it is the general, if not the universal practice under these statutes, when no administrator, foreign or domestic, has been appointed for twelve months, to proceed against the fund here, making the heirs only, and all others interested, parties. And to give to those statutes the technical construction contended for, would have the effect to defeat many of the actions brought, and perhaps to annul numerous decrees heretofore rendered under their provisions.

It is true the creditor might take out letters of administration here, and in that character sue for and recover the fund sought to be subjected, or bring an action *de son tort* against the person intermedling with the estate, and in one of these forms of proceeding, he might perhaps be enabled to reach the fund here, sought to be applied to the payment of his debt. We do not regard either of those modes of proceeding as an ordinary legal remedy, which should preclude the interferance of the Chancellor in behalf of the creditor, under the statutes referred to. 1st. Many creditors are not competent and should not be appointed administrator. 2d. Others may not be able to give the requisite security; and 3d. Others would rather loose a small debt than involve themselves in the trouble of settling and winding up the affairs of a complicated estate. And in the latter form of proceeding, or proceeding against an executor *de son tort*, the personalty might be so held or disposed of in the life of the dece-

It is not necessary for a creditor, in order to reach the personal estate of a deceased non-resident debtor, found in Ky. when there is no administration for twelve months, either to administer or sue the person in possession of the personal estate as executor *de son tort*, but a bill in Chancery against the heirs will reach the personalty as well as realty.

dant, as not to be reached in this form of action, and if the fund consisted in debts, liabilities, or choses in action, they could not certainly be recovered. Besides, the personalty might, in the mean time, be sent out of the State to the non-resident heirs, or the debt paid over to them or to some foreign administrator, and the fund, which should be made liable to the creditors here, escape from the power and jurisdiction of the Chancellor.

Upon the whole, we think the Chancellor had jurisdiction of the case, and having dismissed the bill prematurely, his decree is reversed and the cause remanded that further proceedings may be had.

*Ballard* for plaintiff: *Guthrie* for defendants.